IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
|     Plaintiff/Respondent, | § | |
| | § | |
| v. | § | CR. No. C-11-65-2 |
| | § | (C.A. No. C-12-197) |
| DOMINGO ROLANDO RAMIREZ, | § | |
| | § | |
|     Defendant/Movant. | § | |

## MEMORANDUM OPINION AND ORDER

On June 19, 2012, the Clerk received Movant Domingo Rolando Ramirez' (Ramirez) motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255, along with his memorandum in support. D.E. 45, 46. Ramirez sought and obtained leave to amend his motion. D.E. 47, 49. He filed a supplemental brief on the added claim. D.E. 54. The government filed its combined Motion to Dismiss and Response. D.E. 65, 66. Ramirez filed a Reply. D.E. 68. Since that time, Ramirez has filed two letter motions regarding the status of his former counsel. D.E. 69, 70.

### I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

### II. FACTUAL BACKGROUND AND PROCEEDINGS

#### A.  Summary of Offense

A Border Patrol Agent was notified on December 30, 2010, that a white tractor pulling a fifth wheel trailer with graffiti on the doors was seen traveling on roads within the Laurel Ranch in Duval County, without authorization. Those roads were known to be used by persons transporting contraband. D.E. 1. Approximately an hour later, the Border Patrol Agent spotted a vehicle matching that description at a gas station in Freer, Texas. The vehicle left the gas station and drove

1

north. The agent decided to conduct an immigration check of the vehicle. While following the vehicle, the agent noticed that the trailer did not have a rear license plate and the vehicle was swerving over the fog line. The agent initiated a traffic stop of Ramirez and his co-defendant. Id.

The driver, Ramirez' co-defendant, got out of the vehicle and demanded to know why he had been pulled over. The Agent advised that he was conducting an immigration check. The co-defendant driver produced his Texas Driver's License on request, but Ramirez stated that he had no identification other than a debit card. Ramirez appeared nervous. Id.

After calling in the co-defendant's license information and determining that he had a history of drug smuggling, the Agent talked with Ramirez further to determine if he had other identification. Id. Ramirez produced a Texas Driver's License. After checking on Ramirez' license, the agent learned that Ramirez had a controlled substance history. Another agent arrived to provide back up and a canine unit was called. When the dog arrived, it alerted to an outside factory tool compartment in the trailer. The compartment was opened and the agent saw multiple bundles wrapped in cellophane and covered with axle grease. Ramirez attempted to escape, but was unsuccessful. Id. Both men were arrested and further contraband was discovered in the other factory compartment of the trailer. Agents advised both men of their Miranda rights. DEA Agents spoke to Ramirez after he waived his right to counsel. Id.

Ramirez advised the DEA agents that he was contacted by an unknown individual who asked him if he wanted to make some money by assisting in the transport of what Ramirez believed to be 180 pounds of marijuana. Ramirez was to be paid $1500 upon delivery of the drugs to an undisclosed location. He described the circumstances that led up to his meeting with Guadalupe Encarnacion Guerrero, his codefendant. Guerrero met Ramirez with the already loaded vehicle. Id. According to Ramirez, Guerrero did not know the quantity of drugs they were carrying.

The Complaint filed by investigators with Ramirez' arrest recited that the 22 bundles of marijuana weighed approximately 107 kilograms (gross). Id.

**B.     Criminal Proceedings**

Four days after his arrest, Ramirez was brought before a federal Magistrate Judge and appointed counsel. Minute Entry January 1, 2011, D.E. 2.

The indictment issued in January 2011 charging both men with conspiracy to possess with intent to distribute more than 100 kilograms of marijuana, approximately 109.2 kilograms, and possession with intent to distribute the same quantity of marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(B). Ramirez was arraigned shortly thereafter. Minute Entry February 2, 2011.

Ramirez signed a plea agreement with the government on March 24, 2011, and was rearraigned the same day. Minute Entry March 24, 2011, D.E. 27. The plea agreement stated that Ramirez agreed to plead guilty to Count One of the indictment (conspiracy). In exchange for his plea and a waiver of his right to appeal and file a post-conviction motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255, the government agreed to recommend maximum credit for acceptance of responsibility, to recommend a sentence within the applicable sentencing range, and to dismiss the remaining count of the indictment after sentencing. D.E. 27 at ¶ 2. The appeal waiver is reproduced below,

> Defendant waives his/her right to appeal both the conviction and the sentence imposed. The Defendant is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. The defendant waives the right to appeal the sentence imposed or the manner in which it was determined. The defendant may appeal only (a) a sentence imposed above the statutory maximum; or (b) an upward departure from the Sentencing Guidelines which had not been requested by the United States, as set forth in 18 U.S.C. § 3742(b). Additionally, the defendant is aware that 28 U.S.C. § 2255, affords

3

> the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding.

D.E. 27 at ¶ 7 (emphasis in original). The agreement was signed by both Ramirez and his counsel. Id. at 5. Additionally, the plea agreement advised Ramirez that his sentence would be determined by reference to the sentencing guidelines. Id. at ¶ 6.

> Defendant acknowledges and agrees that the Court may impose any sentence up to and including the statutory maximum, and that sentence to be imposed is within the sole discretion of the Court in accordance with the Sentencing Reform Act of 1984, 18 U.S.C. § 3553(a)(1) and (2), and § 3661. If the Court should impose any sentence up to the maximum established by statute, defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

Id. The plea agreement confirmed that any estimate of a sentencing range that Ramirez obtained from counsel, the United States, or the Probation Department "is a prediction, not a promise, and is not binding on the United States, the Probation Office, or the Court." Id. at ¶ 8.

At rearraignment Ramirez testified he had been given a copy of the indictment and he understood the charges against him. D.E. 60 at 6-7. Ramirez testified that he had discussed the indictment with counsel and he was "very satisfied with counsel." Id. Ramirez further testified that he read the plea agreement, discussed it with counsel before signing it, and signed it voluntarily. Id. at 7-8. Ramirez also testified that he was not offered anything, other than as stated in the terms of the plea agreement, to sign the agreement. Id. at 9

The Court reviewed Ramirez' waiver of appeal and the waiver of his right to file a motion pursuant to 28 U.S.C. § 2255. Ramirez testified that he knew that his plea agreement included the waivers, he discussed the waivers with counsel, and understood them. Id. at 9-10.

The Court advised Ramirez, "Because of the quantity involved in the conspiracy, which drives your penalty range, the penalty that you are looking at is not less than five years, minimum mandatory five years, up to 40 years in prison, a fine of up to $2 million, at least four years of supervised release, a $100 special assessment, and there is also a provision for community restitution up to the amount of any fine imposed by the Court." Id. at 10-11. Ramirez testified that he understood. Id. at 11.

The government recited the facts, which included a net weight of 109.2 kilograms of marijuana. Ramirez admitted the facts were correct and then pled guilty to Count One of the indictment. Id. at 20.

The Court ordered a Presentence Investigation Report (PSR). D.E. 28. The PSR calculated Ramirez' base offense level based upon 109.2 kilograms of marijuana at 26,[1] then subtracted 3 points for acceptance of responsibility, for a total offense level of 23. D.E. 34 at ¶¶ 13-23. Ramirez had a previous conviction for possession of marijuana and another for conspiracy to possess with intent to distribute marijuana, for which he was still on supervised release. Id. at ¶¶ 24-27. He had 6 criminal history points, resulting in application of criminal history category III. Id. at ¶ 28. The Guideline sentencing range was 60-71 months, with a statutory minimum sentence of 60 months. Id. at ¶¶ 46-47.

Sentencing was held in June 2011. During sentencing, Ramirez confirmed that he had been given the PSR, discussed it with counsel and it was correct. D.E. 61 at 3. During sentencing, counsel requested a downward adjustment for minor role, to which the government objected. Id. at 7-8. The government's objection, in part related to the revocation proceeding that was pending for Ramirez'

---

[1] Level 26 applies to 100 to 400 kilograms of marijuana, according to the 2010 Drug Quantity Table, 2D1.1. For that quantity, the minimum statutory sentence is 60 months imprisonment. 21 U.S.C. § 841(b)(1)(B).(vii).

violation of supervised release in his earlier federal drug conspiracy conviction. The Court sentenced Ramirez to 60 months, the minimum statutory sentence, to be followed by 4 years supervised release, no fine, and a $100 special assessment. Id. at 9. Ramirez was reminded that he waived his right to appeal. Id. Judgment was entered on June 28, 2011. D.E. 41. Ramirez did not appeal. The Clerk received his motion to vacate, set aside or correct sentence on June 19, 2012. It is timely.

### III. MOVANT'S ALLEGATIONS

In his original motion, Ramirez complains that his counsel was ineffective during plea bargaining because he did not fully explain all that would be involved at sentencing and because the plea agreement did not provide any consideration to Ramirez and its terms were unconscionable. D.E. 46 at 3-20, see also D.E. 68 at 1. In his supplemental motion, Ramirez claims that counsel was ineffective because he failed to challenge the weight of the marijuana used at sentencing. D.E. 47, 54. In that regard he notes that the quantity of marijuana listed in the Complaint as the gross weight of marijuana is 107 kilograms, but the net weight in the Indictment was 109.2 kilograms. Ramirez' supplemental brief relies on his claim that he was transporting 180 pounds of marijuana, and his assertion that 40 pounds of axles grease and 5 pounds of cellophane were used to wrap the marijuana. D.E. 54 at 3. He claims that the weight of the marijuana was 82 kilograms, which would have changed his sentencing guideline.

After Ramirez filed his motion to vacate and supplemental claim, Ramirez wrote two letters to the Court concerning his counsel's admission to practice. D.E. 69, 70.

### IV. ANALYSIS

**A.     28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: 1) constitutional issues, 2) challenges to the district court's jurisdiction

to impose the sentence, 3) challenges to the length of a sentence in excess of the statutory maximum, and 4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam).

**B.     Ineffective Assistance of Counsel**

An ineffective assistance claim presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001). To show that his attorney's performance at sentencing in a noncapital case was prejudicial under Strickland, the movant must demonstrate that counsel's error led to some increase in the length of his imprisonment. Glover v. United States, 531 U.S. 198, 203 (2001); United States v. Herrera, 412 F.3d 577, 581 (2005).

If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

## C.     Waiver of Right to File § 2255 Motion

Ramirez claims that his attorney provided ineffective assistance during plea bargaining by encouraging him to enter into a plea agreement with no consideration, that the waivers of appeal and post-conviction relief are unconscionable, and the government's promises to make recommendations at sentencing and for acceptance of responsibility were illusory.

Although Ramirez waived his right to appeal or to file a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255, his claims of ineffective assistance do not automatically relieve him of his waivers. United States v. White, 307 F.3d 336, 343-44 (5th Cir. 2002) (an ineffective assistance claim survives a waiver "only when the claimed assistance directly affected the validity of that waiver or the plea itself").

In White, the Court decided there was "no need to except ineffective assistance of counsel claims from the general rule allowing defendants to waive their statutory rights so that they can reach a plea agreement if they wish. The Sixth Amendment right to effective assistance of counsel may also be waived, and thus need not be treated any differently." Id. at 343 (internal citations omitted). Although a defendant's attestation of voluntariness at the time of the plea is not an absolute bar to later contrary contentions, it places a heavy burden upon him. United States v. Diaz, 733 F.2d 371, 373-74 (5th Cir. 1979). A defendant must show such a strong degree of misunderstanding, duress, or misrepresentation by others that his plea would become a constitutionally inadequate basis for imprisonment. Id. (citing Blackledge v. Allison, 431 U.S. 63, 75 (1977)).

The record of Ramirez' rearraignment confirms that he understood the charges against him, understood the quantity of marijuana at issue, understood his minimum sentence was 60 months imprisonment to be followed by a minimum of 4 years supervised release, potential fine, and a special

assessment of $100, and testified that his plea was voluntary.[2] Rearraignment establishes that Ramirez was advised of the core issues to establish a voluntary plea. United States v. Gracia, 983 F.2d 625, 627–28 (5th Cir. 1993) ("When considering challenges to guilty plea proceedings, we have focused on three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of a guilty plea."). Compliance with the admonishments required under Rule 11 of the Federal Rules of Criminal Procedure provides "prophylactic protection for the constitutional rights involved in the entry of guilty pleas." See id. at 627.

---

[2]
6 Let me first ask you, each of you, did you
7 sign your agreement voluntarily?
\*     \*     \*     \*
9 DEFENDANT RAMIREZ: Yes.

5 THE COURT: How about you, Mr. Ramirez, anybody
6 make any offers to you to get you to plead guilty,
7 other than the offers and promises contained in this
8 agreement?
9 DEFENDANT RAMIREZ: No, sir.
\*     \*     \*     \*
18 In this case you are each pleading to
19 conspiracy to possess with intent to distribute more
20 than a hundred kilos of marijuana. In other words, the
21 subject of the conspiracy involved more than a hundred
22 kilos.
23 Because of the quantity involved in the
24 conspiracy, which drives your penalty range, the penalty
25 that you are looking at is not less than five years,
1 minimum mandatory five years, up to 40 years in prison,
2 a fine of up to $2 million, at least four years of
3 supervised release, a $100 special assessment, and there
4 is also a provision for community restitution up to the
5 amount of any fine imposed by the Court.
6 Mr. Ramirez, do you feel like you
7 understand the penalty range?
8 DEFENDANT RAMIREZ: Yes, sir.

D.E. 60 at 8, 9, 11.

Ramirez also testified that he understood the waiver of appeal and post-conviction challenge and had discussed these waivers with counsel before he signed the plea agreement.[3] He did not have any questions regarding the effect of the waivers for the Court. Id.

Ramirez' sworn statements in open court are entitled to a strong presumption of truthfulness. United States v. Lampaziane, 251 F.3d 519, 524 (5th Cir. 2001) (citing Blackledge, 431 U.S. at 74)). (Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy." United States v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002).

---

[3] 10 THE COURT: Mr. Ramirez, did you read your
11 agreement or did Mr. Cromwell read it to you before you
12 signed it?
13 DEFENDANT RAMIREZ: Yes, sir.
14 THE COURT: Do you feel like you understand the
15 terms of this agreement?
16 DEFENDANT RAMIREZ: Yes, sir.
   \*  \*  \*  \*.
10 THE COURT: Each agreement in paragraph 7
11 contains a waiver of certain appeal rights.
12 Mr. Ramirez, were you aware of that before you signed
13 the agreement?
14 DEFENDANT RAMIREZ: Yes, sir.
   \*  \*  \*  \*
17 THE COURT: Did each of you discuss this
18 waiver of appeal with your lawyer before you signed the
19 agreement?
   \*  \*  \*  \*
21 DEFENDANT RAMIREZ: Yes, sir, I did.
22 THE COURT: Were you aware that you not only
23 waived your right to directly appeal your conviction and
24 sentence, but also to collaterally attack it under 28
25 United States Code, section 2255, Mr. Ramirez?
1 DEFENDANT RAMIREZ: Yes, sir.
   \*  \*  \*  \*
5 THE COURT: Mr. Ramirez, do you have any
6 questions that you would like to ask me about this
7 waiver and how it may affect your rights in this case?
8 DEFENDANT RAMIREZ: No, sir, everything is --
9 THE COURT: You feel like you understand it?
10 DEFENDANT RAMIREZ: Yes, sir.

Id. at 8-10.

Ramirez' sworn statements preclude the relief he seeks here. He was not coerced, he understood the charges against him, he understood the trial rights he was giving up, he understood the possible maximum sentence he faced, and understood the waiver of his appellate and post-conviction rights. Because his waiver was knowing and voluntary, he gave up the rights he now seeks to assert. The Court does not reach the merits of Ramirez' claims because they fall within the scope of his waiver. See United States v. Wilkes, 20 F.3d 651 (5th Cir. 1994) (enforcing defendant's voluntary and knowing waiver of § 2255 rights).

Although the Court does not address the merits of Ramirez' complaint that counsel was ineffective on the grounds that he failed to challenge the quantity of marijuana used for sentencing, the Court notes that there is clearly an error somewhere in the calculation of the quantity of marijuana, 107 kilograms gross weight, shown in the Complaint, cannot translate to 109.2 kilograms of net weight (charged in the indictment). But unless the net weight of the marijuana is shown to be less than 100 kilograms, the difference is immaterial to sentencing. See Part II.(B) at p. 5-6, n.1, *supra.* Ramirez admitted the quantity of 109.2 kilograms of marijuana when he pled guilty to the indictment and also admitted to the facts stated by the government regarding his involvement with the shipment. Under that set of facts, Ramirez never saw the marijuana until the agents found it. In light of these facts, Ramirez' theory that the net weight of the marijuana is less than 100 kilograms is pure speculation.

### D. Counsel's Admission to Practice

Ramirez has questioned whether counsel John Cromwell has status to practice in this Court. D.E. 69, 70. Ramirez claims that he was advised by the State Bar of Texas that Cromwell is not licensed in Texas. Cromwell is licensed in Oklahoma and is admitted to practice in the Southern

11

District of Texas according to records of the State Bar of Oklahoma and the records of the Clerk of the Southern District of Texas.

## V.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Ramirez has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules.

A COA "may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Ramirez is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. See Jones, 287 F.3d at 329.

## VI.  CONCLUSION

For the foregoing reasons, Ramirez' motion and supplemental motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 45, 47) are **DENIED**. He is also **DENIED** a Certificate of Appealability.

It is so **ORDERED.**

**SIGNED** on this 12th day of February, 2013.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE